UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

DR. ELAINE C. HALL,

                    Plaintiff,                    23-cv-10385 (JGK)

        - against -                               MEMORANDUM OPINION AND
                                                  ORDER
NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

    The plaintiff, Dr. Elaine C. Hall ("Hall"), a blind
individual, brought this action against the defendant, New York
City Department of Education ("DOE"), alleging that the DOE
discriminated against her in violation of the Americans with
Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq.,
the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §
290 et seq.; the New York City Human Rights Law ("NYCHRL"),
N.Y.C. Admin. Code § 8-101 et seq., and the New York State Civil
Rights Law ("NYSCRL"), N.Y. C.R. Law § 1 et seq. The defendant
now moves to dismiss all of the plaintiff's claims pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the
following reasons, the defendant's motion to dismiss is **granted
in part** and **denied in part**.

## I. Factual Background

Unless otherwise noted, the following facts are taken from the First Amended Complaint, ECF No. 15 (the "FAC"), and are accepted as true for purposes of the current motion.

The plaintiff, Dr. Elaine C. Hall, is a blind woman who resides in New York City. FAC ¶ 10. The plaintiff's blindness substantially limits the major life activity of seeing, rendering her legally blind. Id. ¶¶ 14-15. For personal mobility, the plaintiff uses a guide dog trained in accordance with the applicable state and local laws. Id. ¶¶ 16-17.

The plaintiff is also the mother of three children, including a daughter with disabilities who attended the Clinton School MS260 (the "Clinton School" or the "school") during the 2021-22 and 2022-23 school years for her sixth and seventh grades. Id. ¶¶ 13, 24. The plaintiff's daughter has attention-deficit/hyperactivity disorder ("ADHD"), scoliosis, struggles with anxiety, and suffers from long-COVID symptoms such as syncope, paroxysmal vertigo, and an involuntary movement disorder. Id. ¶ 32.

In April 2022, the plaintiff emailed the principal at the Clinton School regarding her daughter's movement disorder. Id. ¶ 31. The principal referred the plaintiff to the appropriate personnel at the school, and the plaintiff's daughter received accommodations and services as a student with disabilities based

on the school's antidiscrimination accommodations plan adopted pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "504 Plan"). Id. ¶¶ 33–34. At all relevant times, the principal was aware of the plaintiff's disability and her daughter's participation in the 504 Plan. Id. ¶ 35.

The DOE is a municipal entity headquartered in Manhattan. Id. ¶ 19. The DOE oversees and operates public schools, including the Clinton School. Id. ¶ 20. The DOE employs 500 or more employees. Id. ¶ 21.

The allegations in the FAC primarily concern two topics: (a) the plaintiff's unsuccessful job application to work at the Clinton School; and (b) several episodes concerning the plaintiff's access to the school premises.

### A. Hiring

In 1997, the plaintiff received a doctorate degree in psychology from the Graduate School of the City University of New York, and thereafter gained extensive experience working in adolescent psychology. Id. ¶¶ 11–12. During all relevant times, the plaintiff could successfully perform all essential job functions with or without the use of a guide animal. Id. ¶ 18.

On August 2, 2022, the school principal emailed parents of students to inform them that the school was hiring a Substance Abuse and Intervention Specialist ("SAPIS") counselor. Id. ¶ 36. The plaintiff promptly emailed the principal and expressed

interest in the position. Id. ¶ 37. A week later, on August 9, 2022, the plaintiff submitted her resume and cover letter to Dr. Ann Marie Weathers ("Weathers"), who at all relevant times served as the Project Director for the SAPIS program at the DOE. Id. ¶ 38.

Weathers interviewed the plaintiff remotely via Zoom on August 11, 2022. Id. ¶ 39. During the interview, the plaintiff disclosed that she is blind and uses a computer with speech and braille output. Id. ¶ 40. The plaintiff also shared that, as the parent of a child enrolled there, she was familiar with the Clinton School. Id. ¶ 41. A few weeks later, on September 6, 2022, Weathers emailed the plaintiff, "We would like to nominate you for the SAPIS Level II position at The Clinton School," copying the school principal and the DOE's director of human resources (the "HR director"). Id. ¶ 42.

Three days later, on September 9, 2022, Weathers spoke with the plaintiff over the phone to confirm her hire and provide her start date, salary, and benefits information. Id. ¶ 43. During the phone call, the plaintiff asked Weathers whether she could negotiate her salary. Id. ¶ 44. Weathers promised to advocate for the plaintiff to be hired at the highest range listed for the posting. Id. Weathers then suggested that the hiring process would be completed after the plaintiff provided three

4

references. Id. ¶ 45. The next day, the plaintiff provided the three references. Id.

During the September 9, 2022 phone call, Weathers also asked the plaintiff about her personal mobility methods. Id. ¶ 46. The plaintiff informed Weathers that she uses a guide dog and requires a workplace accommodation: the use of her guide dog for mobility during her commute and at work. See id. ¶ 47. After the plaintiff explained that she uses a guide dog, Weathers allegedly became apprehensive, repeatedly expressing safety concerns about having a guide dog present in the workplace. Id. ¶ 48. Although the plaintiff assured Weathers that her guide dog had received specialized training, including on how to interact appropriately and safely with others in the workplace and in public, Weathers asked the plaintiff several times whether the plaintiff would muzzle her guide dog. Id. ¶¶ 49-50. In response, the plaintiff expressed her reticence to muzzle her guide dog. Id. ¶ 51. The plaintiff also suggested that Weathers speak with the plaintiff's vocational rehabilitation counselor at the New York State Commission For The Blind and a job developer to understand better the plaintiff's transition to the workplace and the use of assistive technology. Id. ¶ 53.

As the call continued, Weathers kept asking the plaintiff about the safety of having a guide dog attend work and expressed several concerns about that arrangement. Id. ¶ 54. First,

Weathers shared that she has a personal fear of dogs because she had been bitten by dogs as a child. Id. ¶¶ 54-55. Second, Weathers added that she has severe allergies and asthma. Id. ¶ 56. Third, Weathers noted that the guide dog may cause issues for parents with younger children who attend workshops at the school and for coworkers in any shared office spaces. Id. ¶ 57.

But Weathers then stated that she believed the plaintiff would not share an office because Weathers had already confirmed funding and office space at the school. Id. ¶ 58. In response, the plaintiff volunteered that she had shared an office in the past but had never encountered any problems involving her guide dog. Id. Later that same day, on September 9, 2022, the HR director told the plaintiff that her start date would be October 3, 2022 and that the plaintiff would receive onboarding forms required to complete a background check. See id. ¶ 59.

Around the same time, the plaintiff requested that her daughter transfer classes. Id. ¶ 60. Her daughter's initial class placement had affected her daughter's mental health in ways that could negatively affect her academic performance because her daughter had been bullied. Id. The request ultimately reached the school's assistant principal. Id. ¶ 61. After several email exchanges, the plaintiff visited the school on September 13, 2022 to meet with the assistant principal in person. Id. ¶ 62.

At the September 13, 2022 meeting, the plaintiff discussed her request and told the assistant principal that she would be starting as the school's SAPIS Counselor on October 3, 2022. Id. ¶ 63. This news seemed to surprise and confuse the assistant principal, who told the plaintiff that he had heard the principal announce the incoming SAPIS Counselor by name. Id. ¶ 64. The assistant principal asked the plaintiff to repeat her name. Id. ¶ 65.

The next day, on September 14, 2022, the plaintiff called the HR director to follow up on her job application. Id. ¶ 66. The HR director said that she would promptly send the plaintiff the onboarding documents and inquire into the plaintiff's salary negotiation request. Id. ¶ 67.

But on the following day, September 15, 2022, Weathers called the plaintiff and said that the DOE and the Clinton School "decided not to move forward with your application because after giving it more consideration, having a daughter at the school you work at wouldn't be fair" and may create confidentiality concerns. Id. ¶¶ 68-69. The plaintiff challenged Weathers's rationale, pointing out that the decisionmakers knew weeks earlier that the plaintiff's disabled daughter attended the school, and that the plaintiff had met with the assistant principal just days prior to advocate for her disabled daughter. Id. ¶ 70. Weathers responded that Weathers herself has a child

with autism spectrum disorder, and that Weathers often advocates for her child at that child's school. Id. ¶ 71. Weathers explained that it would be exceedingly difficult for Weathers herself to work at the school that her child attends, insinuating that the same would be true for Hall. See id. The plaintiff questioned whether the retraction was due to discrimination against her because of her blindness and because of her status as a parent and caretaker of a minor with disabilities. Id. ¶ 72. Ignoring the plaintiff's comments regarding discrimination, Weathers suggested that the plaintiff apply to two other SAPIS openings at other schools that would be posted in the following weeks. Id. ¶ 73.

The next day, on September 16, 2022, the plaintiff sent Weathers an email that stated, "It is not justifiable to [retract my job offer] on the basis of either familial status or on the basis of my relationship with a person with a disability, in this case my child. It's no more justifiable than were the ostensible reason to be my blindness, gender, or any other protected characteristic." Id. ¶ 74. The email continued, "It's also not justifiable to do so ostensibly on the basis of confidentiality concerns, as confidentiality is not an issue. As a licensed psychologist and person of integrity I am duty-and honor-bound to maintain confidentiality in all applicable arenas at all times." Id. ¶ 75. Weathers responded, "Please note during

our conversation I shared in the near future our department intent to post other positions." Id. ¶ 76.

On December 11, 2022, the plaintiff received a schoolwide email announcing that a person named Rabinowitz had been hired as the school's SAPIS counselor. Id. ¶ 83. The plaintiff alleges that Rabinowitz is not an individual with a disability, the parent of a child with disabilities attending the school, the caretaker of a minor with a disability, and does not have comparable or equivalent professional experience to that of the plaintiff. Id. ¶¶ 84-87.

## B. School Access

In September 2021, on the first day at the Clinton School for Dr. Hall's daughter, Dr. Hall waited on a nearby sidewalk with her guide dog for her daughter's dismissal. Id. ¶ 28. As she waited, a school safety agent approached the plaintiff and demanded in a hostile tone, "Take that dog across the street!" Id. ¶ 29. Shocked, the plaintiff replied, "No. This is a guide dog," and remained in place while the agent walked away. Id.

On April 25, 2023, the plaintiff visited the Clinton School during the school day to sign out her daughter early for a medical appointment. See id. ¶ 88. Immediately after the plaintiff walked into the school with her guide dog, a school safety agent stopped her and said, "You can't come in with a dog." Id. ¶ 89. The plaintiff refused to stop and walked into

the lobby. Id. Once in the lobby, the school safety agent instructed the plaintiff to wait while the agent called the school office to determine whether the plaintiff could walk into the school with her guide dog. Id. ¶ 90. After making the phone call, the school safety agent denied the plaintiff access. Id. ¶ 91.

Undeterred, the plaintiff walked past the school safety agent and took an elevator to the seventh floor. Id. ¶ 92. When the plaintiff stepped out of the elevator, the school's secretary stepped into the same elevator, sign-out book in hand, and asked the plaintiff to reenter the elevator and accompany the secretary back to the first floor. Id. ¶ 93.

Back on the first floor, while the plaintiff waited for her daughter, the secretary and the school safety agent discussed whether the plaintiff should be denied entrance to the school when accompanied by her guide dog. Id. ¶ 94. During their conversation, the pair mentioned another parent who had tried to enter the school with a pet dog. Id. The plaintiff then intervened and complained that the school should not discriminate against the plaintiff based on her being accompanied by a guide dog. Id. ¶ 95.

At all relevant times, the plaintiff's guide dog wore a large harness imprinted in large letters with "Guiding Eyes for the Blind" ("Guiding Eyes"), the name of an accredited guide-dog

10

training school. Id. ¶ 96. The plaintiff's guide dog also wore a collar with a tag that identified the dog as one trained at Guiding Eyes. Id. The plaintiff further carried a photo identification card that showed that she and her dog graduated as a team from Guiding Eyes. Id. The guide dog was therefore easily identifiable as a guide dog and distinguishable from other dogs. Id.

### C. Procedural History

On January 6, 2023, before initiating this action, the plaintiff submitted a notice of claim to the Office of the New York City Comptroller. FAC, Ex. C, ECF No. 15-3. Then, on March 10, 2023, the plaintiff submitted a formal charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), which opened a case. FAC ¶ 8; FAC, Ex. A, ECF No. 15-1. On October 19, 2023, the EEOC provided the plaintiff with a right-to-sue letter. FAC ¶ 8; FAC, Ex. A.

The plaintiff filed this action on November 29, 2023, within ninety days of receiving the right-to-sue letter. See ECF No. 1. The plaintiff amended her complaint on March 8, 2024. ECF No. 15. The defendant now moves to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 21.

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III. Discrimination Claims

The plaintiff alleges that the defendant's failure to hire her violated the ADA, the NYSHRL, the NYCHRL, and the NYSCRL. FAC ¶¶ 99–185.[2]

### A. State & Municipal Discrimination Claims

The NYSHRL, the NYCHRL, and the NYSCRL set forth similar anti-discrimination provisions. In relevant part, the NYSHRL prohibits discrimination in hiring "because of an individual's . . . disability" or "familial status," N.Y. Exec. Law § 296(1)(a), the NYCHRL prohibits discrimination in hiring "because of the [person's] actual or perceived . . . disability" or "caregiver status," N.Y.C. Admin. Code § 8-107(1)(a), and the NYSCRL prohibits discrimination in hiring "solely because [a] person is a person with a disability and is accompanied by a service dog" unless "the person's disability would prevent such

---

[2] The plaintiff's access claims are addressed separately below.

person from performing the particular job," N.Y. C.R. Law § 47-a. See also N.Y. C.R. Law § 47-b (guaranteeing that "[p]ersons with a disability accompanied by . . . service dogs" have the "right to have such dogs in their immediate custody while exercising any of the rights and privileges set forth in this article").

The plaintiff asserts four legal theories of discrimination in hiring under the NYSHRL, the NYCHRL, and the NYSCRL. The plaintiff claims initially that the defendant retracted her job offer because of the plaintiff's disability in violation of the NYSHRL, FAC ¶¶ 139–44, the NYCHRL, id. ¶¶ 155–58, and the NYSCRL, id. ¶¶ 165–68. Next, the plaintiff alleges that the defendant discriminated against her in hiring based on her daughter's disability in violation of the NYSHRL, id. ¶¶ 151–54, and the NYCHRL, id. ¶¶ 176–79. The plaintiff then asserts that the defendant retracted her job offer because of her familial status as a parent of a minor with disabilities in violation of the NYSHRL, id. ¶¶ 159–61, and the NYCHRL, id. ¶¶ 180–82. Finally, the plaintiff contends that the defendant retaliated against her based on her request for a reasonable accommodation and her complaints about discrimination in violation of the NYSHRL, id. ¶¶ 162–64, and the NYCHRL, id. ¶¶ 183–86.

New York substantive law and federal procedural law govern the plaintiff's state and municipal claims. Gasperini v. Ctr.

for Humans., Inc., 518 U.S. 415, 427 (1996). State notice-of-claim requirements and statutes of limitations are substantive law. Felder v. Casey, 487 U.S. 131, 152 (1988). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction . . . must follow the state's jurisdictional determination." Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 257 (2d Cir. 1991). Additionally, courts must analyze the scope and applicability of the NYCHRL separately from any federal and state statutes. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).

## 1. Notice-of-Claim Requirement

The plaintiff's discrimination claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL must be dismissed for failure to comply with the New York Education Law because the plaintiff fails to allege that she complied with the applicable notice-of-claim provisions.

New York Education Law § 3813(1) provides:

No action . . . for any cause whatever . . . involving the rights or interests of any district . . . shall be prosecuted or maintained against any school district, board of education, . . . or any officer of a school district, board of education, . . . or school . . . unless it shall appear by and as an allegation in the complaint . . . that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim.

15

N.Y. Educ. Law § 3813(1). And unless a more specific law provides otherwise, "no action . . . shall be commenced against any entity specified in [§ 3813(1)] more than one year after the cause of action arose." N.Y. Educ. Law § 3813(2-b). These substantive requirements are "construed strictly," and "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999); see also Felder, 487 U.S. at 152 ("The state notice-of-claim statute is more than a mere rule of procedure . . . ."). Additionally, these "requirements apply to causes of action sounding in discrimination, retaliation, and defamation." See Smith v. N.Y.C. Dep't of Educ., 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011).[3]

Applying the notice-of-claim requirement set forth in § 3813(1), the Court must dismiss the plaintiff's discrimination-in-hiring claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL. Id.; see also Bey v. Westbury Union Free Sch. Dist., No. 21-cv-2048, 2022 WL 900615, at *4 (E.D.N.Y. Mar. 28, 2022). Section 3813(1) applies to all of the plaintiff's state and municipal discrimination claims because the single defendant, the DOE, is a "board of education" as that term is defined in

---

[3] The plaintiff conceded at oral argument that section 3813(1)'s notice-of-claim requirement applies to all of her discrimination claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL.

the New York Education Law. See Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010); Falchenberg v. N.Y.C. Dep't of Educ., 375 F. Supp. 2d 344, 350 (S.D.N.Y. 2005). In relevant part, "board of education" includes "by whatever name known the governing body charged with the general control, management and responsibility of the schools of a . . . city school district." N.Y. Educ. Law § 2(14). Therefore, to survive a motion to dismiss, the plaintiff must plead that she presented a written verified claim to the DOE's governing body within three months after her claim accrued. N.Y. Educ. Law § 3813(1); see also N.Y. Gen. Mun. Law § 50-e.

The FAC fails to allege that the plaintiff timely presented her notice of claim to the DOE's governing body. Generally, an employment-discrimination claim "accrues when a plaintiff suffers an injury, not when [s]he learns that the injury was the result of wrongdoing." Rusis v. Int. Bus. Machs. Corp., No. 18-cv-8434, 2022 WL 2440451, at *4 (S.D.N.Y. July 3, 2022). For "a claim for failure to hire," the injury occurs when the plaintiff "applie[s] for an available position for which she was qualified and [i]s rejected under circumstances giving rise to an inference of unlawful discrimination." See Wang v. Phoenix Satellite Television U.S., Inc., 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013). Therefore, under the NYSHRL, the NYCHRL, and by the same logic, the NYSCRL, a failure-to-hire claim "accrue[s]

17

when [the] [p]laintiff was informed or had reason to know of the failure to hire." See <u>Walker v. City of New York</u>, No. 11-cv-2941, 2014 WL 1244778, at *6 (S.D.N.Y. Mar. 26, 2014) (citing <u>Del. State Coll. V. Ricks</u>, 449 U.S. 250, 258 (1980)).

In this case, the plaintiff's hiring-discrimination claims accrued at the latest on September 15, 2022. On that day, Weathers called the plaintiff and informed her that the DOE "decided not to move forward with your application." FAC ¶¶ 68-69. At that moment, the plaintiff "had reason to know of the failure to hire." See <u>Walker</u>, 2014 WL 1244778 at *6. Accordingly, the plaintiff's hiring-discrimination claims "accrued as of that date." See <u>id.</u>

Once her claims accrued, the plaintiff was required to submit a written claim to the DOE's governing body by December 15, 2022, three months after their accrual. N.Y. Educ. Law § 3813(1). But the FAC alleges that the plaintiff filed a notice of claim with the DOE "on January 6, 2023." FAC ¶ 9, Ex. C. The FAC therefore fails to allege that the plaintiff complied with the New York Education Law's notice-of-claim provisions, meriting dismissal of all of the plaintiff's state and municipal

claims alleging hiring discrimination. <u>See</u> <u>Smith</u>, 808 F. Supp. 2d at 583; <u>Falchenberg</u>, 375 F. Supp. 2d at 350.[4]

An exception to § 3813(1)'s notice-of-claim requirement "exist[s] for actions that seek vindication of a public interest." <u>Falchenberg</u>, 375 F. Supp. 2d at 350. But the plaintiff does not invoke this exception because the plaintiff plainly seeks to vindicate only private interests. The FAC primarily seeks money damages for the plaintiff's "own alleged emotional and financial suffering." <u>Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.</u>, 127 F. Supp. 2d 452, 455 (S.D.N.Y. 2001).

Instead, arguing that the late notice was an omission made in good faith, and that an extension would not prejudice the defendant, the plaintiff asks this Court to exercise its discretion and "extend the time to serve a notice of claim." <u>See</u> N.Y. Educ. Law § 3813(2-a). But the plaintiff does not point to any case where a court exercised its discretion to excuse the late submission of a notice of claim pursuant to § 3813(1), let alone a case where a court did so in similar factual circumstances. The Court declines to excuse the plaintiff's late notice of claim because she is not an unsophisticated litigant

---

[4] Indeed, after oral argument, the plaintiff requested leave to amend and withdraw her claims brought against the DOE pursuant to the NYSHRL, the NYCHRL, and the NYSCRL, implicitly admitting that the plaintiff failed to comply with § 3813(1)'s notice-of-claim requirement. ECF No. 28.

and, as further discussed below, several of her parallel federal claims brought pursuant to the ADA survive the defendant's motion to dismiss. Accordingly, the plaintiff's discrimination-in-hiring claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL must be **dismissed.**

### 2. Statute of Limitations

The defendant also argues that the plaintiff's state and municipal claims were filed too late. "The New York Education Law provides for a one-year statute of limitations for discrimination claims against schools, school districts, and boards of education." Ferraro v. Ramapo Cent. Sch. Dist., No. 17-cv-2039, 2017 WL 6343686, at *2 (citing N.Y. Educ. Law § 3813(2-b)). Because the plaintiff's hiring-discrimination claims accrued at the latest on September 15, 2022, the plaintiff was required to bring her state and municipal claims by September 15, 2023. See Ferraro, 2017 WL 6343686 at *3. But the plaintiff brought this action on November 29, 2023, outside the one-year statute of limitations. See id.

Recognizing the problem, the plaintiff argues that the filing of her EEOC charge on March 10, 2023, tolled the one-year statute of limitations imposed by New York Education Law § 3813(2-b). Tolling would bring the plaintiff's state and municipal hiring-discrimination claims within the one-year statute of limitations because the EEOC proceedings lasted over

seven months, concluding when the agency issued the plaintiff's right-to-sue letter on October 19, 2023.

"The availability of tolling here implicates an intra-district split . . . ." Schwartz v. Middletown City Sch. Dist., No. 23-cv-1248, 2024 WL 1257095, at *9 (S.D.N.Y. Mar. 25, 2024). Courts in this District disagree on whether "the filing of a charge with the EEOC tolls the statute of limitations" for "related claims under the NYSHRL." Compare Franchitti v. Cognizant Tech. Sols. Corp., No. 21-cv-2174, 2022 WL 2657171, at *8 (S.D.N.Y. July 8, 2022) (finding that "the overwhelming weight of authority within the Circuit" holds that tolling applies), with Ferraro, 2017 WL 6343686 at *3 (finding that "the weight of the authority suggests that" tolling does not apply).

Because the plaintiff clearly did not comply with the notice-of-claim requirements set forth in New York Education Law § 3813(1), requiring dismissal of her state and municipal claims alleging discrimination in any event, it is unnecessary to reach the tolling issue in this case.[5]

### 3. Request to Amend

Anticipating the dismissal of her state and municipal claims, the plaintiff requests leave to file an amended complaint adding the same NYSHRL, NYCHRL, and NYSCRL claims

---

[5] It is also unnecessary to reach the defendants' argument that there is no private cause of action under the NYSCRL §§ 47, 47-a, and 47-b.

against Weathers in her individual and personal capacities. The plaintiff contends that this amendment would cure the state-law defects because the notice-of-claim requirement and the one-year statute of limitations, in relevant part, apply only to "school district[s], board[s] of education, . . . or any officer[s]" thereof. N.Y. Educ. Law §§ 3813(1) & 3813(2-b).

But Weathers is an "officer" protected from untimely claims by the stringent requirements set forth in New York Education Law §§ 3813(1) & 3813(2-b). The New York Education Law defines the term "school officer" as follows:

> The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Educ. Law § 2(13). Applying this definition, courts have held that "[s]uperintendents qualify as officers upon whom a notice of claim must be filed, but principals [and lesser officials] do not." See, e.g., Collins v. City of New York, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (citing N.Y. Educ. Law § 2(13)); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 312 (E.D.N.Y. 2014), overruled in part on other grounds by Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 100-01 (2d Cir.

2020). Holding a district-wide office is a key indication that an individual falls within the definition of a "school officer." Bertuzzi v. Copiague Union Free Sch. Dist., No. 17-cv-4256, 2020 WL 5899949, at *21 (E.D.N.Y. Mar. 9, 2020), report and recommendation adopted as modified, No. 17-cv-4256, 2020 WL 3989493 (E.D.N.Y. July 15, 2020); Guity v. Uniondale Union Free Sch. Dist., No. 15-cv-5693, 2017 WL 9485647, at 10 n.6 (E.D.N.Y. Feb. 23, 2017), report and recommendation adopted, No. 15-cv-5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017).

The FAC alleges that Weathers held a district-wide office and performed "duties generally relate[d] to the administration of affairs connected with the public school system" as a whole. See N.Y. Educ. Law § 2(13). Namely, Weathers served as the SAPIS Project Director at the DOE, and Weathers informed the plaintiff about upcoming SAPIS openings at other schools. FAC ¶¶ 38, 73. Thus, according to the FAC, Weathers possessed district-wide policymaking authority with respect to the SAPIS program. See id. Therefore, Weathers is an "officer" within the meaning of New York Education Law § 3813. See Rubin v. N.Y.C. Bd. of Educ., No. 20-cv-10208, 2023 WL 1972729, at *18 (S.D.N.Y. Jan. 6, 2023) (finding that various director-level employees in the DOE's Office of Related Services "[we]re clearly school officers"), report and recommendation adopted, No. 20-cv-10208, 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023); Benedith, 38 F. Supp. 3d at 312

(finding that the position of "Mathematics Chairperson," a district-wide office, fell within the definition of "school officer").

Accordingly, any state or municipal claims arising out of the facts alleged in the FAC brought against Weathers individually or personally must meet the requirements set forth in New York Education Law § 3813(1). However, the plaintiff has not alleged that she complied with the requirements set forth in section 3813(1). And at oral argument, the plaintiff conceded that the January 6, 2023 notice of claim was the only such notice that she filed.

In addition, because Weathers is a school officer, § 3813(2-b)'s one-year limitations period protects Weathers. But the plaintiff's proposed amendment adding Weathers as a defendant would not "relate[] back" pursuant to Rule 15(c)(1) of the Federal Rules of Civil Procedure. See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 548-49 (2010); In re Vitamin C Antitrust Litig., 995 F. Supp. 2d 125, 128-29 (E.D.N.Y. 2014). The plaintiff's claims against Weathers are therefore time-barred by § 3813(2-b)'s one-year statute of limitations.

While leave to amend should be freely granted, see Foman v. Davis, 371 U.S. 178, 182 (1962), it should be denied if the amendment would be futile. Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002). The plaintiff indisputably failed to comply with the

notice-of-claim requirements imposed by New York Education Law § 3813(1). Additionally, the one-year statute of limitations under § 3813(2-b) has expired. Because §§ 3813(1) and 3813(2-b)'s protections apply to Weathers, a "school officer," the proposed amendment adding Weathers as an individual defendant for purposes of the discrimination-in-hiring claims would be futile.

In any event, attempting to add claims against Weathers would not save the plaintiff's state and municipal claims brought against the DOE; those claims are barred by the failure to file a notice of claim against the DOE. If the plaintiff truly believed that she had claims against Weathers, she could bring a separate action against Weathers. In any such action, Weathers would have the opportunity to assert all appropriate defenses against the plaintiff's claims. Accordingly, the plaintiff's request for leave to amend to add claims against Weathers is **denied.**

\*   \*   \*

Because the plaintiff failed to comply with the notice-of-claim provision set forth in New York Education Law § 3813(1), the plaintiff's discrimination-in-hiring claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL must be **dismissed.**

**B. ADA Discrimination Claims**

The FAC alleges three theories of liability pursuant to the ADA: (1) failure to hire, (2) associational discrimination, and (3) retaliation.

**1. Failure to Hire**

The plaintiff asserts that the defendant retracted her job offer and failed to hire her because of her disability, caregiver status, and requests for an accommodation, in violation of Title I of the ADA. FAC ¶¶ 117–21.

Title I of the ADA makes it unlawful for an employer to discriminate in hiring decisions "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Employment discrimination claims brought pursuant to the ADA are governed by the burden-shifting standard established for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). Under the McDonnell Douglas evidentiary framework, the plaintiff must first establish a prima facie case of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993). The ADA requires four elements to establish a prima facie case giving rise to a temporary presumption of discriminatory motive. See Kinneary v. City of New York, 601 F.3d 151, 158 (2d Cir. 2010). The plaintiff must demonstrate that: (1) her employer is subject to the statute, (2) she

26

suffers from a disability or is perceived to suffer from such a disability within the meaning of the statute, (3) she could perform the essential functions of the job with or without a reasonable accommodation, and (4) she suffered an adverse employment action because of her disability. See, e.g., McMillan, 711 F.3d at 125; Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

However, at the pleading stage, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002). Rather, to survive a motion to dismiss, the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015). At this stage, the elements of a prima facie case "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." Sommersett v. City of New York, No. 9-cv-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011). With respect to the final element, "a plaintiff must show that the adverse employment action 'took place under circumstances giving rise to an inference of discrimination.'" Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

27

The defendant does not challenge the sufficiency of the FAC's allegations regarding the first three elements of the plaintiff's prima facie case. Instead, in seeking to dismiss the plaintiff's ADA failure-to-hire claim, the defendant argues that the FAC fails to allege plausibly that the plaintiff suffered an adverse employment action because of her disability.

But plainly, the FAC pleads nonconclusory facts that "giv[e] rise to an inference of discrimination." Davis, 804 F.3d at 235 (quoting Graham, 230 F.3d at 39). During the September 9, 2022 phone call, Weathers allegedly expressed concerns about the plaintiff's request to be accompanied by her trained guide dog at work. FAC ¶¶ 46-58. These comments are "indicative of discriminatory animus in the hiring process." See Adeniji v. N.Y. State Off. of State Comptroller, No. 18-cv-761, 2019 WL 4171033, at *4 (S.D.N.Y. Sept. 3, 2019). Weathers's comments signal that the defendant retracted the plaintiff's job offer because of the plaintiff's request to have her guide dog accompany her to work, an accommodation that must be accepted as reasonable at this stage. See 42 U.S.C. 12111(9). And retracting the plaintiff's job offer because of her request for a reasonable accommodation is an adverse employment action with a plausible causal nexus to the plaintiff's disability. See Davis, 804 F.3d at 235. Accordingly, the FAC adequately pleads a failure-to-hire claim pursuant to Title I of the ADA.

## 2. Associational Discrimination

The plaintiff also claims that the defendant discriminated against her based on her association with her disabled daughter. FAC ¶¶ 130-34. Title I of the ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

"To state a claim for associational discrimination under the ADA, a plaintiff must allege:

> 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 467-68 (2d Cir. 2019) (quoting Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016)). "One scenario that may support an inference that the adverse employment decision was motivated by associational discrimination is distraction: the employer's fear that the employee will be inattentive at work due to the disability of the disabled person." Id. at 468. Claims alleging associational

discrimination under the ADA are also governed by the McDonnell Douglas burden-shifting framework. Id.

The parties dispute only the fourth element of the plaintiff's associational-discrimination claim. Thus, to prevail on this motion, the plaintiff "must plausibly allege 'that the plaintiff . . . has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" Kelleher, 939 F.3d at 468 (quoting Littlejohn, 795 F.3d at 311).

The FAC easily "satisfies the fourth element of an associational discrimination claim: an inference that the disability of the plaintiff's relative or associate was a determining factor in the employer's adverse action." See id. at 470. The DOE retracted the plaintiff's job offer two days after she met with the assistant principal at the school to advocate for her disabled daughter. See FAC ¶¶ 60-69. And during the September 15, 2022 call, Weathers told the plaintiff that "having a daughter at the school you work at wouldn't be fair." Id. ¶ 68. At this stage, "[t]hese allegations provide all that is needed." Kelleher, 939 F.3d at 470. Accordingly, the plaintiff adequately states an associational discrimination claim pursuant to Title I of the ADA.

### 3. Retaliation

The plaintiff further asserts that the defendant retaliated against her because of her complaints about discrimination and

her request for a reasonable accommodation. FAC ¶¶ 135-38. The FAC mistakenly relies on 42 U.S.C. § 2000e-3(a), a provision found in Title VII of the Civil Rights Act of 1964 that prohibits employers from discriminating against an employee based on the employee's opposition to "any practice made an unlawful employment practice by this subchapter." FAC ¶ 136.

However, the plaintiff's retaliation claims more comfortably arise under Title V of the ADA, which expressly prohibits "retaliation against any individual who has asserted rights under the ADA." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999); see 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . .").[6] Because "the essence of a cause of action is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated," Oneida Indian Nation of New York v. Cnty. of Oneida, 617 F.3d 114, 139 (2d Cir. 2010), the plaintiff's ADA retaliation claims arise under Title V of the ADA, specifically 42 U.S.C. § 12203(a).

The elements of an ADA retaliation claim are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged

---

[6] After oral argument, the plaintiff submitted a letter acknowledging that "the prohibition of retaliation is found in Title V of the ADA." ECF No. 28.

retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002). "To survive a motion to dismiss, an employee need not specifically plead every element; she must allege just enough factual matter to render the retaliation claims plausible." Pediford-Aziz v. City of New York, 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016).

### i.

As a threshold matter, "[n]either party has addressed whether [the] [p]laintiff, as a prospective employee who has not yet been hired, can assert a claim against a potential employer for retaliation—as opposed to failure-to-hire—in violation of the ADA." See Conway v. Healthfirst Inc., No. 21-cv-6512, 2022 WL 4813498, at *3 n.4 (S.D.N.Y. Sept. 30, 2022). However, given the broad nature of retaliation claims, failure to hire constitutes an adverse employment action in the ADA retaliation context, provided the other elements of a retaliation claim are met.

For ADA retaliation claims, the Second Circuit Court of Appeals has defined an "adverse action" as "any action that could well dissuade a reasonable worker from making or

supporting a charge of discrimination." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 170 (2d Cir. 2024) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)). This definition "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Id. (quoting Vega, 801 F.3d at 90).

Therefore, if a plaintiff can bring a failure-to-hire claim pursuant to Title I of the ADA based on direct discrimination, the plaintiff should be able to bring a retaliatory failure-to-hire claim pursuant to Title V of the statute. See id. But as with similar retaliation claims, the plaintiff must state that the plaintiff "applied for a specific position or positions and was rejected therefrom." See Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998); see also Velez v. Janssen Ortho, LLC, 467 F.3d 802, 807-09 (1st Cir. 2006). In this case, the FAC plainly alleges such facts.

Moreover, the ADA and Title VII set forth "substantially similar" retaliation prohibitions. Sarno, 183 F.3d at 159. Applying the law of this Circuit, courts have determined that a plaintiff may bring retaliatory failure-to-hire claims pursuant to Title VII. See, e.g., Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018); Lin v. N.Y.S. Dep't of Labor, No. 14-cv-771, 2017 WL 435811, at *6 (N.D.N.Y. Feb. 1, 2017); see also Hicks v. Baines, 593 F.3d 159, 165 (2d

Cir. 2010) ("Title VII's anti-retaliation provision applies broadly to employer actions that would have been materially adverse to a reasonable employee or job applicant.") (citing Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). Accordingly, the plaintiff can bring a retaliatory failure-to-hire claim pursuant to Title V of the ADA.

**ii.**

On this motion, the following facts are unchallenged:

(i)    The two alleged activities—complaining about discrimination and requesting reasonable accommodations—are protected activities under the ADA. See Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) ("Protected activity is action taken to protest or oppose statutorily prohibited discrimination."); Rodriguez v. Atria Sr. Living Grp., Inc., 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) ("Requesting a reasonable accommodation of a disability is an ADA-protected activity.").

(ii)   The defendant knew the two alleged activities were protected activities when it acted adversely against the plaintiff.

(iii)  The defendant's failure to hire the plaintiff was an adverse action in the retaliation context. See Burlington N., 548 U.S. at 68 (defining an adverse

action as one that would "dissuade[] a reasonable
worker from" engaging in protected activity); Lin,
2017 WL 435811 at *6.

Therefore, the defendant challenges only the fourth element
of the plaintiff's ADA retaliation claims: a causal connection
between the protected activity and the adverse action. "To prove
a causal connection" in alleging an ADA retaliation claim, "a
plaintiff must show that 'but for' the protected activity, the
adverse action would not have been taken." Sharikov, 103 F.4th
at 170. "Causation may be shown either through direct evidence
of retaliatory animus or 'indirectly, by showing that the
protected activity was followed closely by discriminatory
treatment.'" Id. (quoting Tafolla v. Heilig, 80 F.4th 111, 125
(2d Cir. 2023)).

The FAC pleads a plausible causal connection between one of
the alleged protected activities and the alleged adverse action,
but not both. The FAC fails to connect the plaintiff's
complaints regarding discrimination to the defendant's failure
to hire. The plaintiff states that she complained about
discrimination only after the defendant failed to hire her. See
FAC ¶¶ 72-74. Thus, the protected activity closely followed the
adverse decision, not the other way around. Recognizing the lack
of a causal connection, the plaintiff at oral argument withdrew

her retaliation claim based on the protected activity of complaining about discrimination.

However, the plaintiff alleges a plausible connection between the other protected activity—requesting a reasonable accommodation—and the defendant's failure to hire her. The plaintiff alleges that she disclosed that she is blind on August 11, 2022, during her job interview with Weathers. FAC ¶ 39-40. About a month later, on September 9, 2022, the plaintiff requested a reasonable accommodation—the use of a guide dog for mobility—during a phone call with Weathers. Id. ¶¶ 43, 47. Weathers immediately expressed concerns regarding the requested accommodation. Id. ¶¶ 48-58. Less than a week later, on September 15, 2022, the defendant retracted the plaintiff's job offer. Id. ¶ 68.

The plaintiff's allegation that the failure to hire "occurred within days after her" protected activity is "sufficient to plausibly support an indirect inference of causation." Littlejohn, 795 F.3d at 319-20. The circumstances surrounding the job-offer retraction, particularly Weathers' comments in response to the plaintiff's request for an accommodation of her blindness, lend further "plausible support to the reduced prima facie requirements" at the initial stage of this discrimination lawsuit. Id. at 316; see also Sarno, 183 F.3d at 159 (applying the framework for Title VII retaliation

36

claims to ADA retaliation claims). Therefore, the plaintiff has
stated a plausible ADA retaliatory failure-to-hire claim based
on her request for an accommodation.

### IV. School-Access Claims

The plaintiff also alleges that the defendant denied the
plaintiff equal access to the school in violation of the ADA,
the NYSHRL, and the NYCHRL. FAC ¶¶ 122-29, 145-50, 169-75.

### A. State and Municipal Access Claims

The plaintiff's state and municipal access claims fail for
substantially the same reasons as her state and municipal
discrimination claims: the plaintiff has not complied with the
notice-of-claim requirements set forth in the New York Education
Law. As the plaintiff conceded at oral argument, section 3813(1)
applies to the plaintiff's access claims brought pursuant to the
NYSHRL and the NYCHRL. See Smith, 808 F. Supp. 2d at 583;
Falchenberg, 375 F. Supp. 2d at 350.

Indisputably, the plaintiff failed to satisfy the notice-
of-claim requirement set forth in section 3813(1). The plaintiff
submitted her sole notice of claim on January 6, 2023, over a
year after the September 2021 incident and three months before
the April 2023 incident. Moreover, the notice of claim addressed
only her discrimination claims, and thus did not present the
plaintiff's access claims, as required by the statute. See New
York Educ. Law § 3813(1). Accordingly, the plaintiff's access

37

claims brought pursuant to the NYSHRL and the NYCHRL must be **dismissed.**[7]

## B. ADA Access Claims

The plaintiff's ADA access claims, however, may proceed. Part A of Title II provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, . . . be subjected to discrimination by any [public] entity." 42 U.S.C. § 12132. Part A defines a "qualified individual with a disability" in relevant part as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. § 12131(2).

Although the plaintiff brings her access claim pursuant to Title II of the ADA, FAC ¶¶ 122-29, "[c]ourts have read the requirements of Title II and Title III as being consistent with each other." Mary Jo C. v. N.Y.S. and Loc. Ret. Sys., 707 F.3d 144, 158 n.6 (2d Cir. 2013).[8] One provision housed in Title III prohibits discrimination "on the basis of disability in the full

---

[7] The plaintiff has not brought any access claims pursuant to the NYSCRL.
[8] Under the ADA, Title II addresses state and local government services; Title III addresses public accommodations and commercial facilities. See 28 C.F.R. Parts 35 & 36.

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Id. § 12182(a). Title III includes in the definition of "discrimination" the "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." Id. § 12182(b)(2)(A)(ii).

The Department of Justice has issued implementing regulations that require public entities to "operate each service, program, or activity, so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The implementing regulations also require public accommodations to "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." Id. § 36.302(c).

Distilled from these provisions, a Title II Part A claim contains three elements: "(1) [the plaintiff] is a qualified individual with a disability; (2) the defendant is subject to [the Act]; and (3) [the plaintiff] was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against

by the defendant because of [the plaintiff's] disability."
Disabled in Action v. Bd. of Elections in City of New York, 752
F.3d 189, 196–97 (2d Cir. 2014). "A public entity discriminates
against a qualified individual with a disability when it fails
to provide 'meaningful access' to its benefits, programs, or
services." Id. at 197.

The defendant disputes only the last element, arguing that
the FAC fails to state a plausible claim pursuant to Title II
because the plaintiff was not denied entry to the school in
September 2021 and did enter the school in April 2023. Otherwise
said, the defendant argues that the plaintiff had "meaningful
access" to the school's public accommodations. But
"[i]ndividuals may be deprived of meaningful access . . . due to
architectural barriers or a public entity's failure to modify
existing facilities and practices." Disabled in Action, 752 F.3d
at 197.

In this case, the plaintiff alleges that a school safety
agent told her to take her guide dog across the street in
September 2021. FAC ¶¶ 28–29. Then, on April 25, 2023, the
school safety agent allegedly told the plaintiff that she could
not enter the school with her guide dog and denied her entrance.
Id. ¶¶ 88–91. In addition, after the plaintiff entered the
school in April 2023, the school secretary involuntarily

escorted the plaintiff from the seventh floor back to the first floor. Id. ¶¶ 92-95.

These allegations support the plausible inference that the defendant "failed to adopt policies or procedures to effectively train [its] employees how to deal with disabled individuals." Cf. Camarillo v. Carrols Corp., 518 F.3d 153, 157 (2d Cir. 2008); see 28 C.F.R. § 36.302(c) (requiring the adoption of "policies, practices, or procedures to permit the use of a service animal by an individual with a disability"). "Such a failure to train can constitute a violation of the ADA . . . ." Camarillo, 518 F.3d at 157; see also Stan v. Wal-Mart Stores, Inc., 111 F. Supp. 2d 119, 124 (N.D.N.Y. 2000); Stamm v. N.Y.C. Transit Authority, No. 4-cv-2163, 2013 WL 244793, at *4 (E.D.N.Y. Jan. 22, 2013). Accordingly, the plaintiff adequately states a claim pursuant to Title II of the ADA. See Mary Jo C., 707 F.3d at 158 n.6.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit.

The defendant's motion to dismiss the plaintiff's claims brought pursuant to the NYSHRL, the NYCHRL, and the NYSCRL is **granted** and those claims are **dismissed with prejudice**. The defendant's motion to dismiss the plaintiff's claims brought

pursuant to the ADA is **granted in part** and **denied in part** as discussed above. The plaintiff's request for leave to amend the FAC to add Weathers as a defendant in her individual and personal capacities is **denied**.

The parties are directed to submit a Rule 26(f) report by **December 20, 2024.**

The Clerk is directed to close ECF No. 21.

**SO ORDERED.**

Dated:     New York, New York
           December 3, 2024

                                    _____
                                         John G. Koeltl
                                 United States District Judge